*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-0068**

In the Matter of Issuance of Air Emissions Permit No. 13700345-101 for PolyMet
Mining, Inc., City of Hoyt Lakes, St. Louis County, Minnesota.

**Filed December 18, 2023**
**Affirmed; motion granted**
**Bjorkman, Judge**

Minnesota Pollution Control Agency

Jay E. Eidsness, Joy R. Anderson, Minnesota Center for Environmental Advocacy, St. Paul, Minnesota (for relators Minnesota Center for Environmental Advocacy, Friends of the Boundary Waters Wilderness, and Sierra Club)

Monte A. Mills, Aaron P. Knoll, Greene Espel PLLP, Minneapolis, Minnesota; and

Jay C. Johnson (pro hac vice), Venable LLP, Washington, DC (for respondent Poly Met Mining, Inc.)

Keith Ellison, Attorney General, Adonis Alfonso Neblett, Assistant Attorney General, St. Paul, Minnesota; and

Sarah Koniewicz, Holland & Hart LLP, Boulder, Colorado; and

Emily C. Schilling (pro hac vice), Holland & Hart LLP, Salt Lake City, Utah (for respondent Minnesota Pollution Control Agency)

Considered and decided by Worke, Presiding Judge; Bjorkman, Judge; and Ede, Judge.

**BJORKMAN**, Judge

This certiorari appeal follows a remand for respondent Minnesota Pollution Control Agency (the agency) to provide further findings in support of its 2018 decision to issue an air-emissions permit to respondent Poly Met Mining Inc. (PolyMet). Relators are a coalition of environmental groups: Minnesota Center for Environmental Advocacy (the center), Friends of the Boundary Waters Wilderness, and Sierra Club (collectively, the coalition). The coalition challenges the agency's supplemented decision to issue the permit, arguing that (1) the agency's determination that Minn. R. 7007.1000, subp. 2(C) (2021), does not warrant denial of the permit, relies on an erroneous interpretation of state permitting rules; and (2) the decision is arbitrary and capricious because the agency declined to consider evidence from after 2018. The coalition also notes that the administrative record does not contain the post-2018 evidence that it proffered to the agency on remand or the agency's letter declining to consider the evidence, and it moves this court to supplement the record with those documents. We grant the motion to supplement the record and affirm the agency's supplemented decision.

## FACTS

PolyMet proposes to build a copper-nickel-platinum mine and processing plant in northeastern Minnesota. It calls the project NorthMet. Because NorthMet, if built, will emit air pollution, PolyMet must obtain an air-emissions permit before proceeding with construction. This court and the supreme court previously addressed the NorthMet air-emissions permit in a series of three decisions: *In re Issuance of Air Emissions Permit No.*

*13700345-101 for PolyMet Mining, Inc.*, 943 N.W.2d 399 (Minn. App. 2020) (*PolyMet I*), *rev'd*, 955 N.W.2d 258 (Minn. 2021) (*PolyMet II*); *In re Issuance of Air Emissions Permit No. 13700345-101 for PolyMet Mining, Inc.*, 965 N.W.2d 1 (Minn. App. 2021) (*PolyMet III*), *rev. denied* (Minn. Sept. 29, 2021).

Air-emissions permits are governed by the Clean Air Act, which the agency implements. *See PolyMet III*, 965 N.W.2d at 4. Under the Clean Air Act, the type of permit that a facility requires depends on its capacity for producing air pollution. A "major stationary source" has the capacity to emit more than 250 tons of air pollution per year and is subject to the strictest pollution-control standards. *Id.* (citing 40 C.F.R. § 52.21(b)(1)(i)(a)-(b), (12) (2019)). A facility with the capacity of a major source that agrees to limit its output by implementing enforceable operational restrictions is known as a "synthetic minor source." *Id.* at 5. If a facility permitted as a synthetic minor source later seeks to expand to operate as a major source, it must undergo preconstruction review as though it had never begun construction and must retrofit pollution-control technology appropriate to a major source. *PolyMet II*, 955 N.W.2d at 261, 267. But if the facility sought the synthetic-minor-source permit in bad faith, always intending to operate as a major source, the permit is known as a "sham" permit and the facility may be subject to sanctions. *Id.* at 261-62, 267.

In 2016, PolyMet applied for a synthetic-minor-source air-emissions permit for NorthMet. It acknowledged that the facility would have the capacity to operate as a major source but agreed to restrict the ore-processing rate, known as "throughput," to 32,000 tons per day to reduce pollutant output and qualify for a synthetic-minor-source permit. In early

3

2018, the agency released a draft permit to the public and the Environmental Protection Agency (EPA), conducted public meetings, and received public comments. Based on public comments and discussions with EPA, the agency modified the draft permit, including enhancing its monitoring provisions.

On March 26, 2018, ten days after the public-comment period closed, PolyMet's Canadian parent corporation filed a technical report with Canadian securities regulators addressing the feasibility of the NorthMet project. Among the Canadian report's 273 pages are 10 pages comparing the expected internal rate of return if NorthMet operates as proposed (10.3%) with the expected internal rate of return if NorthMet were to operate with increased throughputs of 59,000 tons per day or 118,000 tons per day (18.5% and 23.6%, respectively). The report states that the increased-throughput scenarios are "preliminary" and "speculative," noting that expanding the operation would require additional engineering, environmental review, permitting, and investment.

The center raised concerns about the Canadian report. In June 2018, it petitioned the Minnesota Department of Natural Resources for a supplemental environmental impact statement (SEIS), arguing that the report, attached to its petition with additional exhibits, shows PolyMet's intent to build a larger project; the center sent a copy of the petition and supporting exhibits to the agency. The natural-resources department denied the petition, and the coalition appealed. In November, the center asked the agency to stay a decision on the NorthMet air-emissions permit pending that appeal. The agency denied the request. Then, in mid-December, the center sent a letter to the agency arguing that the Canadian report showed that the NorthMet project could not attract investors as proposed and

4

requesting that the agency investigate whether PolyMet was seeking a sham permit. The agency responded by letter, saying that the increased-throughput scenarios were "speculative at best" and did not indicate that PolyMet intends "to operate the mine at levels higher than the synthetic minor throughput limits" or to "circumvent major source permitting."

The next day, the agency granted the permit. Its eight-page decision determined, without explanation, that the permitting preconditions in Minn. R. 7007.1000, subp. 1 (2021), are satisfied and none of the reasons to deny a permit listed in Minn. R. 7007.1000, subp. 2 (2021), exists. The decision did not address the Canadian report or the concern expressed in the center's December 2018 letter that PolyMet will expand operations after securing the synthetic-minor-source permit.

The coalition, a fourth environmental group, and a tribal band appealed by writ of certiorari. They argued that the agency "failed to adequately consider whether PolyMet intends to operate within the limits of the permit for which it applied, or if, instead, it was seeking a 'sham' permit." *PolyMet I*, 943 N.W.2d at 402. They pointed to the Canadian report and the three times the center documented concerns about the report—the June 2018 SEIS petition, the November 2018 stay request, and the December 2018 letter. *Id.* at 402, 409-10. And because the SEIS petition and the stay request were not included in the administrative record, they moved this court to supplement the record with those materials. *Id.* at 402, 406. We granted the motion, reasoning that the documents were available to the agency when it rendered its decision and are probative of whether the agency failed to consider relevant information. *Id.* at 406-07. As to the permit, we determined that the

5

agency made only conclusory findings as to the permitting rules, Minn. R. 7007.1000, subps. 1-2, and "[did] not address in any fashion whether PolyMet is engaged in sham permitting." *Id.* at 409-11. We remanded for additional findings and further proceedings. *Id.* at 411.

On further review, the supreme court reversed our sham-permitting decision. *PolyMet II*, 955 N.W.2d at 260-61; *see also id.* at 269 (deeming challenge to supplementation decision forfeited). It reasoned that federal regulations only provide a retrospective response to sham permitting, so the agency "could, if it so desired, investigate sham permitting during the synthetic minor source permit application process, but it is not *required* to do so." *Id.* at 267-68. The supreme court also noted that our opinion did not specifically address the challenges to the agency's determinations that (1) PolyMet will comply with all permit conditions, as required under Minn. R. 7007.1000, subp. 1(G) (the compliance requirement); and (2) PolyMet has not failed to disclose relevant information or submitted false or misleading information, which is grounds to deny the permit under Minn. R. 7007.1000, subp. 2(C) (the nondisclosure denial ground). *Id.* at 269. The supreme court remanded for us to decide those issues. *Id.* at 269-70.

On remand, we again determined that the agency's 2018 findings were insufficient to permit appellate review. *PolyMet III*, 965 N.W.2d at 4. We noted that the Canadian report could raise questions regarding both the compliance requirement and the nondisclosure denial ground, but the agency failed to make "reflective findings" on either one, or to "directly address" whether the report and related materials "merited additional inquiry." *Id.* at 9-11. We emphasized that we were not concluding "that the record could

not support a reasoned decision by the [a]gency to issue a permit," only that the agency "did not make such a reasoned decision." *Id.* at 12. Accordingly, we remanded for the agency "to make additional findings and issue a revised decision." *Id.*

In December 2021, the agency did so, issuing a 21-page supplemented version of its 2018 decision to issue the synthetic-minor-source permit to PolyMet. In the supplemented decision, the agency details its process of developing the permit with PolyMet, its receipt and consideration of comments from the public and EPA, and its receipt and review of the Canadian report and related materials. It also specifically addresses the compliance requirement and the nondisclosure denial ground. The agency explains that it anticipates PolyMet will comply with the permit's more than 1,000 conditions largely because the permit includes robust monitoring and reporting provisions. And it finds that PolyMet did not fail to disclose relevant facts or knowingly submit false or misleading information because (1) PolyMet certified the truth, accuracy, and completeness of its permit application; (2) the Canadian report and related materials do not raise concerns about PolyMet's compliance with permit conditions because they do not call into doubt the financial viability of NorthMet as proposed; and (3) "potential expansion" to use more of NorthMet's capacity in the future is not "relevant" to the current permitting process.

The coalition appeals by writ of certiorari and moves to supplement the record.[1]

---

[1] After briefing, PolyMet moved this court to dismiss for lack of jurisdiction based on a claimed service error. We granted the motion; the supreme court reversed and remanded. *In re Issuance of Air Emissions Permit No. 13700345-101 for PolyMet Mining, Inc.*, 991

**DECISION**

## I. Supplementing the record will aid our review of the coalition's arguments.

We review the agency's permitting decisions by writ of certiorari pursuant to the Minnesota Administrative Procedure Act, Minn. Stat. §§ 14.63-.69 (2022). *PolyMet II*, 955 N.W.2d at 265. The record in a certiorari appeal consists of documents submitted to the agency or considered by the agency in reaching its decision. Minn. R. Civ. App. P. 110.01, 115.04. Generally, our review is "confined" to that record. Minn. Stat. § 14.68. But this rule is not absolute. *See* Minn. Stat. § 14.66 (permitting "corrections or additions to the record when . . . desirable"); *PolyMet I*, 943 N.W.2d at 407 (citing *White v. Minn. Dep't of Nat. Res.*, 567 N.W.2d 724, 735 (Minn. App. 1997)). We may consider evidence outside the administrative record if:

> (1) the agency's failure to explain its action frustrates judicial review; (2) additional evidence is necessary to explain technical terms or complex subject matter involved in the agency action; (3) the agency failed to consider information relevant to making its decision; or (4) plaintiffs make a showing that the agency acted in bad faith.

*White*, 567 N.W.2d at 735.

The coalition moves to supplement the record with four documents: (1) an October 5, 2021 letter from the center asking the agency to reopen the record to "accept new information and comment," which attaches two documents; (2) the first attachment, a November 2019 announcement from PolyMet regarding an increase in its "proven and

---

N.W.2d 867, 870 (Minn. 2023). We reinstated the appeal and permitted supplemental briefing.

8

probable" mineral resources; (3) the second attachment, a September 2020 news article reporting that executives behind an Alaskan mining project pursued permitting for the project while secretly planning a larger one; and (4) the agency's October 21, 2021 responsive letter to the center, stating that the agency would not reopen the administrative record to consider information postdating its 2018 decision. The coalition argues that these documents satisfy the *White* factors. We agree with respect to the first factor.

The coalition argues that declining to reopen the record was arbitrary and capricious. And because the agency's supplemented decision does not address reopening the record, the coalition contends we must consider the four documents in order to decide that issue. The coalition is correct that the existing record does not contain the agency's explanation as to why it did not reopen the record.[2] This omission "frustrates" our review of that decision. *White*, 567 N.W.2d at 735. As we observed when addressing supplementation in *PolyMet I*, "the agency should have preserved and included the disputed . . . documents in the materials filed with this court on certiorari appeal even if, as it decided, the agency ultimately considered the disputed . . . documents not to be included in the decision-making record." 943 N.W.2d at 407 n.10. Doing so is consistent with the agency's "responsibility to develop and preserve a record that allows for meaningful review by appellate courts." *In re Denial of Contested Case Hearing Requests*, 993 N.W.2d 627, 650-53 (Minn. 2023)

---

[2] Indeed, because the administrative record does not contain the center's October 2021 letter and attachments, it does not reflect that the issue of reopening the record was even presented to the agency.

(quotation omitted). And it is necessary here for us to address the coalition's arguments. Accordingly, we grant the motion to supplement the record.

## II. The agency's supplemented decision is neither affected by erroneous interpretation of permitting rules nor arbitrary or capricious.

In a certiorari appeal, our review is "generally deferential," but we review questions of law de novo. *In re Envtl. Assessment Worksheet for 33rd Sale of State Metallic Leases*, 838 N.W.2d 212, 216 (Minn. App. 2013), *rev. denied* (Minn. Nov. 26, 2013). We will reverse if the decision may have prejudiced relators' substantial rights because it is affected by an "error of law," lacks substantial evidentiary support, or is arbitrary or capricious. Minn. Stat. § 14.69.

### A. The agency did not err in interpreting the permitting rules.

The coalition first contends that the agency's supplemented decision is based on erroneous interpretation of air-emissions permitting rules. Interpretation of an administrative rule presents a question of law, which we review de novo. *In re NorthMet Project Permit Application*, 959 N.W.2d 731, 757 (Minn. 2021). We give a rule's words and phrases their common and ordinary meaning. *Id.* And we consider the rule "as a whole." *Denial of Contested Case*, 993 N.W.2d at 663 (quotation omitted). If the rule is unambiguous, we will simply apply its plain meaning. *In re Thompson*, 935 N.W.2d 147, 152 (Minn. App. 2019), *rev. denied* (Minn. Dec. 17, 2019).

The coalition argues that the agency erred in its interpretation of (1) rules requiring certification and supplementation of a permit application and (2) the rule establishing nondisclosure as a ground for denying a permit. We address each argument in turn.

10

### 1. Certification and Supplementation Requirements

An applicant seeking an air-emissions permit must certify the "truth, accuracy, and completeness" of its application, Minn. R. 7007.0500, subp. 3 (2021), and must supplement or correct its application as necessary throughout the permitting process, Minn. R. 7007.0600, subp. 2 (2021). The agency reasoned that, together, these rules create a presumption of "transparency and fair dealing" that is pertinent to its determination whether to deny an application based on nondisclosure. The coalition argues that the rules are not susceptible of such a reading. Even if the coalition is correct, reversal is warranted only if the error "affected" the agency's decision. Minn. Stat. § 14.69. We are not persuaded that it did.

We first observe that the agency's discussion of the presumption comprises little more than a few sentences of its 21-page supplemented decision. The agency does not characterize the presumption as "unimpeachable" or "concrete" evidence of PolyMet's truthfulness, as the coalition contends. To the contrary, the agency's findings—most of which the coalition does not dispute—confirm that it carefully evaluated PolyMet's submissions and any evidence potentially calling them into doubt.

The agency found that none of PolyMet's submissions or statements suggested that PolyMet omitted, falsified, or misrepresented relevant information, and none of the public comments raised such concerns. It also found that PolyMet "engaged in open communications" with the agency throughout the permitting process by responding to the agency's questions and clarifying and supplementing information, and it cited examples of this open communication. The coalition does not dispute any of these findings.

11

In addition, the agency articulated two reasons for finding that the 2018 Canadian report and related materials do not indicate that PolyMet omitted, falsified, or misrepresented relevant information. First, the agency reasoned that those materials do not raise concerns about PolyMet's compliance with synthetic-minor-source permitting conditions because they do not call into doubt the financial viability of NorthMet as proposed. The coalition does not challenge this analysis.[3] Second, the agency explained it was aware that NorthMet would have additional capacity—a fact "consistent with the overall premise of the synthetic permitting program"—and it does not consider "potential expansion" to use more of that capacity in the future to be "relevant" to the current permitting process. The coalition disputes the validity of the agency's reasoning on this second point, which we discuss below. But these findings collectively demonstrate that the agency did not simply presume PolyMet's "transparency and good faith"; it used a deliberate and reasoned process to determine that PolyMet satisfied its disclosure obligations. As such, the coalition's challenge to the supplemented decision based on misinterpretation of the certification and supplementation requirements fails.

## 2. Nondisclosure Denial Ground

It is "grounds for the agency to refuse to issue" an air-emissions permit if "[a]n applicant has failed to disclose fully all facts *relevant* to the stationary source or activity to be permitted, or the applicant has knowingly submitted false or misleading information to the agency." Minn. R. 7007.1000, subp. 2(C) (emphasis added). The agency reasoned that

---

[3] On appeal, the coalition expressly states that it is not challenging the agency's finding that PolyMet will comply with the permit.

information in the Canadian report about potential expansion scenarios does not implicate this ground because it does not bear on whether PolyMet will comply with the permit and therefore is not relevant to its permitting decision.

The coalition contends the agency construes relevance too narrowly. It argues that information is relevant not only if it bears on whether the applicant *will comply* with the permit, but also if it bears on whether the applicant *intends to expand* its operations after obtaining the permit. In doing so, it relies on our statement in *PolyMet I* that "if expansion is the *current* intent, the time to comply with [major source] requirements is now." 943 N.W.2d at 410. That statement was central to our holding that the agency insufficiently explained its permitting decision when it failed to address sham-permitting concerns. *Id.* Because the supreme court reversed that holding, *PolyMet II*, 955 N.W.2d at 268, the statement is no longer authoritative.

The coalition similarly argues that an applicant's intent to obtain a sham synthetic-minor-source permit and expand its operations in the future is relevant under the Clean Air Act. But the Clean Air Act is at the heart of the "entirely retrospective" federal regulatory scheme that the supreme court held does not require the agency to consider intent during the synthetic-minor-source permitting process. *PolyMet II*, 955 N.W.2d at 267.

Finally, the coalition asserts that the agency's rules do not "limit[]" the agency's consideration "to the permit application before it." We disagree. The nondisclosure denial ground does precisely that by focusing on matters "relevant to the stationary source or activity to be permitted." Minn. R. 7007.1000, subp. 2(C). This focus on the current permit application is echoed in Minn. R. 7007.0500, subps. 1-2 (2021), which detail the

13

information that the agency expects from applicants, and Minn. R. 7007.1000, subp. 1 (2021), which lists the requirements for issuing a permit. Both of these rules focus on identifying the appropriate permit conditions for the facility in question and establishing a monitoring and enforcement scheme to ensure compliance with those conditions; neither says anything about an applicant's intent to expand in the future. *See* Minn. R. 7007.0500, subps. 1-2, .1000, subp. 1.

Moreover, the agency's determination that an applicant's intent to expand operations in the future is not relevant to the current permitting process is consistent with air-emissions permitting generally. Where, as here, there is no claim that the applicant will operate beyond the limits of its synthetic-minor-source permit, any intent to expand in the future is irrelevant. Any such intent would not translate into actual expanded operations until the applicant obtains a major-source permit. An applicant seeking such a permit is not guaranteed to secure it; full permitting review would be required. *PolyMet II*, 955 N.W.2d at 266-67. And an applicant could be sanctioned for sham permitting if circumstances confirmed that expansion was its intent all along. *Id.*

In sum, the agency did not err by determining that an applicant's consideration of potential future expansion does not implicate the nondisclosure denial ground.

### B. The agency's supplemented 2018 decision is neither arbitrary nor capricious.

The coalition also argues that the agency acted arbitrarily and capriciously by issuing its supplemented decision based solely on information available to it in 2018 rather than reopening the record to consider the documents the center proffered in 2021 and other

new evidence. In assessing this argument, we consider whether the agency has failed to take "a hard look at the salient problems" or "genuinely engage[] in reasoned decision-making." *Denial of Contested Case*, 993 N.W.2d at 646-47 (quotation omitted). Here, the "salient problems" facing the agency when it issued its supplemented decision are defined by our decision in *PolyMet III*.

The issue before us in *PolyMet III* was narrow—whether substantial evidence supported the agency's conclusions that the compliance requirement is satisfied and the nondisclosure denial ground does not apply. 965 N.W.2d at 4, 8. We concluded that the agency failed to make "reflective findings" explaining those conclusions. *Id.* at 11. But we declined to reverse the agency's decision, reasoning that the operative "defect" was not "that the record could not support a reasoned decision by the [a]gency to issue a permit" but that the agency failed to "make such a reasoned decision." *Id.* at 11-12. To remedy that specific shortfall, we remanded for the agency to "make additional findings and issue a revised decision." *Id.* at 12.

The coalition contends the agency did not have to limit itself to making additional findings on the existing record but had discretion to reopen the record and "deal with the problem afresh by taking *new* agency action." *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908 (2020) (quotation omitted) (describing options available to an agency on remand for failure to "fully explain" its decision). The coalition asserts that the agency's refusal to do so was arbitrary and capricious because the agency ignored relevant information in its possession—the documents the center proffered in October 2021. We are not persuaded. Even if the agency had discretion to undertake an

15

entirely new permitting process, it was neither arbitrary nor capricious for it to do precisely as we directed in *PolyMet III* and simply explain its 2018 decision, with reference to the existing record. Moreover, reopening the record to consider the proffered documents and other evidence of potential future expansion would not have led to a different result because, as the agency explained in its supplemented decision, its focus is the current permit.

The coalition also argues that declining to reopen the record was arbitrary and capricious because it was a departure from the agency's normal permitting process—a "'detailed' and 'iterative'" process that includes "'independently verifying technical data and assumptions' and seeking out missing information from applicants." *See PolyMet III*, 965 N.W.2d at 10. We disagree. As discussed above, the agency's unchallenged findings show that it devoted two years to carefully examining PolyMet's application and input from the public (including the center) and EPA. It was not arbitrary or capricious for it to rely on the record developed in that process to make the additional findings that we ordered in *PolyMet III* rather than starting the permitting process over.

Finally, the coalition asserts that the agency's supplemented decision constituted an "impermissible post hoc rationalization" because the 2018 decision did not contain any reasoning, merely bald conclusions. *See Homeland Sec.*, 140 S. Ct. at 1908 (explaining that an agency may "elaborate" on its original reason "but may not provide new ones"). This argument is similarly unavailing. In *PolyMet III*, we explained that the agency's decision and its separate letter regarding the Canadian report identified reasons for issuing the permit but failed to explain those reasons sufficiently; we remanded for the agency to

do so. 965 N.W.2d at 9-10. The agency's decision to adhere to those reasons and elaborate on them based on the record that existed when it advanced them was consistent with *Homeland Sec.* and *PolyMet III*. Accordingly, the coalition has not demonstrated that the supplemented decision is arbitrary or capricious.

In sum, we discern no basis for disturbing the agency's supplemented decision granting PolyMet's application for a synthetic-minor-source air-emissions permit for NorthMet. The agency followed our remand directions, making "reflective" and undisputed findings that show it carefully considered the salient problems and reveal its reasons for concluding that PolyMet will comply with the permit and that the nondisclosure denial ground does not apply.

**Affirmed; motion granted.**